UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

JASON WEMES,

                                       Plaintiff,

        v.                                                                                   No. 6:22-cv-06297-MAV-MWP

THE CANANDAIGUA NATIONAL BANK & TRUST
COMPANY,
                                       Defendant.
───────────────────────────────────────

**MEMORARNDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL DOCUMENTS CONCERNING DEFENDANT'S NET WORTH**

**PRELIMINARY STATEMENT**

      This is an employment discrimination and retaliation case. Plaintiff alleges his new supervisor used Plaintiff's sexual orientation to frame him as a suspect in a law enforcement investigation, which was then used as the basis for Plaintiff's termination.

      Plaintiff moves under Fed. R. Civ. P. 37(a) to compel Defendant to produce its most recent audited annual financial statement or tax return as relevant to Plaintiff's requested relief of punitive damages.

**BACKGROUND OF PLAINTIFF'S ALLEGATIONS**

      Plaintiff worked for Defendant as a custodial supervisor for many years with positive performance reviews. *See* Pltf.'s Compl. (Doc. 1) ¶¶ 23, 26-27. Later on, a new supervisor, Jason Ingalls, began making homophobic remarks to Plaintiff, such as telling Plaintiff that pictures of him and his husband in his cubicle were inappropriate for work. *Id.* ¶ 31.

      In June 2021, law enforcement officers purportedly engaging in an undercover operation led them to CNB's main branch where Plaintiff worked. This undercover operation involved officers posing as an underage child on the social media app in an attempt to catch adults seeking

1

to engage in sexual relations with the purported minor. This sting operation led the officers to CNB's main branch where Plaintiff was working at the time. *Id.* ¶¶ 36-42.

On June 29, 2021, Plaintiff encountered a plain-clothed individual (who he did not then know was law enforcement) lingering in the CNB basement and asked if he could assist. This person identified himself as a law enforcement officer, showed Plaintiff a picture of an individual that had no resemblance to Plaintiff,[1] and asked Plaintiff if he had seen the suspect. Plaintiff replied he may have seen the suspect a couple weeks ago, asked if they would like to speak with bank security, and was told no. *Id.* ¶¶ 36-42.

Law enforcement's conduct during this initial encounter with Plaintiff in no way suggested Plaintiff was considered a possible suspect. Only after law enforcement engaged with Plaintiff's new supervisor, however, did Plaintiff became a purported suspect (he has never been arrested). Plaintiff alleges his new supervisor used Plaintiff's sexual orientation, among other ways, to frame him as a suspect in a law enforcement investigation, which was then used as the basis for Plaintiff's termination.

## PROCEDURAL HISTORY

Plaintiff's Complaint requests, among other things, a jury trial and punitive damages. *Id.* at Requests for Relief ¶ C. Concerning the claim for punitive damages, Plaintiff requested documents about Defendant's net worth in its Second Set of Requests for Production (RFPs), Nos. 16-18. *See* Declaration of Gregory L. Silverman dated November 4, 2024 (Silverman Dec.) ¶¶ 3-4. Despite multiple attempts and resolving this dispute, as of the filing of this Motion, Defendant has steadfastly refused to provide documents concerning its net worth. Nor did Defendant's counsel respond to Plaintiff's offer to comply with RFP Nos. 16-18 by providing its "most recent audited annual financial statement or tax return" after summary judgment

---

[1] Such pictures are purportedly no longer available. When and why they were deleted is a subject of conflicting testimony.

proceedings and a reasonable time before trial. *Id.* ¶¶ 5-10. As Defendant is a privately-owned company, documents concerning its net worth are not publicly available. *Id.* ¶ 11.

## LEGAL ARGUMENT

Documents concerning Defendant's net worth are indisputably relevant to Plaintiff's claim for punitive damages. In *Equal Emp. Opportunity Comm'n v. Frontier Hot-Dip Galvanizing, Inc.*, the court recognized the well-established principle that, "[b]ecause a defendant's financial circumstances, wealth or net worth may be considered in determining an award of exemplary damages, defendant's financial information is relevant to plaintiff's claim for punitive damages." No. 16-CV-0691V(SR), 2023 WL 4999831, at *5 (W.D.N.Y. Aug. 4, 2023); (*citing Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 150 (E.D.N.Y. 2008) ("Tax returns are considered relevant to the subject matter of an action when a party's income may be used to calculate damages.").

The court in *Frontier* ultimately ordered the defendant to "disclose its most recent audited annual financial statement or tax return." 2023 WL 4999831 at *5; *also Spin Master Ltd. v. Bureau Veritas Consumer Prod. Serv., Inc.*, No. 08-CV-923A (SR), 2016 WL 690819, at *18 (W.D.N.Y. Feb. 22, 2016) (ordering pre-trial disclosure of defendants' most recent annual audited financial statement).

For the same reasons as stated in *Frontier* and *Spin Master Ltd.*, Plaintiff seeks an order compelling Defendant to produce its most recent audited annual financial statement or tax return.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an Order compelling Defendant to produce its most recent audited annual financial statement or tax return, Plaintiff's reasonable expenses and attorney's fees incurred in bringing this Motion, and such other relief as may be just and proper.

3

Dated: November 4, 2024

        **GREGORY L. SILVERMAN, ESQ., PLLC**

        <u>s/ Gregory L. Silverman</u>
        118 Genesee St.
        Geneva, NY 14456
        Telephone: (585) 480-6686
        greg@silverman-law.com