Exhibit 2

## GREGORY L. SILVERMAN, ESQ., PLLC

118 Genesee St.                                                                                          greg@silverman-law.com
Geneva, NY  14456                                                                                              585.480.6686

October 7, 2024

**VIA EMAIL ONLY**

Ryan T. Biesenbach, Esq.
Underberg & Kessler, LLP
300 Bausch & Lomb Place
Rochester, New York 14604
rbiesenbach@underbergkessler.com

      **RE:**      **Jason Wemes v. The Canandaigua National Bank & Trust Company; Case No.: 6:22-cv-06297**

      **SUBJECT:**      **Defendant's discovery deficiencies**

Dear Ryan:

    This letter is to inform you of certain deficiencies in your client's discovery responses, the failure to properly prepare the Bank's 30(b)(6) designee, schedule a date for Plaintiff's physical inspection, and to provide you with the opportunity to remedy the same.

    **I.**    **Plaintiff's Requests for the Production of Documents (RFPs).**

        **A.**  **Video surveillance footage**

CNB responded to Nos. 1 and 2 of Plaintiff's Second Set of RFPs as follows:

> **REQUEST NO. 1**: All documents concerning the location of surveillance cameras on all floors of the Bank's main and operations buildings located at 72 S. Main St., Canandaigua, NY 14424.
>
> **RESPONSE**: Defendant objects to this Request on the grounds that the scope of information sought is grossly overbroad and vague by virtue of use of the term "all." Such a Request necessarily calls for speculation and would entail the production of information unrelated to the claims or legitimate defenses alleged in this matter and is not in accordance with the proportionality in discovery required by Rules 26(b)(l) and 33(a)(2), as amended, effective December 1, 2015. Defendant further objects to this Request on the grounds that its subject matter is irrelevant to the parties' respective claims and defenses and is unlikely to lead to the discovery of any admissible evidence. Indeed, this Request attempts to exceed the scope of the relevant issues and is therefore unduly burdensome and intended solely to harass. Defendant further objects to this Request on the grounds that it seeks highly sensitive information and the production of potentially responsive materials would expose Defendant and its employees to undue risk. Subject to the aforementioned objections Defendant will not produce documents or information that may be within its possession absent Court Order.
>
> **REQUEST NO. 2**: All documents concerning the scope of view for each surveillance camera located in the Bank's main and operations buildings located at 72 S. Main St.,

October 7, 2024
Page 2

    Canandaigua, NY 14424.

    **RESPONSE**: Defendant objects to this Request on the grounds that the scope of information sought is grossly overbroad and vague by virtue of use of the term "all." Such a Request necessarily calls for speculation and would entail the production of information unrelated to the claims or legitimate defenses alleged in this matter and is not in accordance with the proportionality in discovery required by Rules 26(b)(1) and 33(a)(2), as amended, effective December 1, 2015. Defendant further objects to this Request on the grounds that its subject matter is irrelevant to the parties' respective claims and defenses and is unlikely to lead to the discovery of any admissible evidence. Indeed this Request attempts to exceed the scope of the relevant issues and is therefore unduly burdensome and intended solely to harass. Defendant further objects to this Request on the grounds that it seeks highly sensitive information and the production of potentially responsive materials would expose Defendant and its employees to undue risk. Subject to the aforementioned objections Defendant will not produce documents or information that may be within its possession absent Court Order.

  In an initial attempt to narrow the issues in dispute and documents sought, Plaintiff is requesting documents concerning the location and scope of view for each surveillance camera which existed on June 29, 2021, and to the extent applicable, any documents concerning the addition/removal of any surveillance cameras afterwards in an attempt to clarify which cameras existed on June 29, 2021.

  As to the scope of "documents" related to this request, Rule 34(a)(1)(A) defines documents and ESI as:

    any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, <u>after translation by the responding party into a reasonably usable form</u>

(Emphasis added.) This broad definition would include screenshots of how computer software can be viewed by the user. *See, e.g., In & Out Welders, Inc. v. H & E Equip. Servs., Inc.*, No. 16-86, 2018 WL 2147502, at *3 (M.D. La. May 9, 2018) ("There is no dispute that the electronically stored information sought in the form of screenshots is obtainable pursuant to Rule 34(a)(1)(A)."); *Bean v. John Wiley & Sons Inc.*, No. 11-08028, 2012 WL 129809, at *1 (D. Ariz. Jan. 17, 2012) (FRCP 34(a)(1)(A) "explicitly places the burden of translating the data on the responding party").

  I understand that CNB uses the software March Networks Command Client ("March") for its video surveillance system. March's website shows that a user of its software can show specific cameras (such as "Operations – 2nd Floor Stairs") and their scope of view.[1]

  I'm requesting that CNB begin to respond to these responses by producing screenshots of March's software as follows: (1) a complete list of all cameras and their names currently in

---

[1] *See generally:* https://www.marchnetworks.com/products-services/vms/command-client/

October 7, 2024
Page 3

operation at CNB's Main Street Branch; (2) each such camera's scope of view; and (3) any documents concerning the addition/removal of any surveillance cameras afterwards in an attempt to confirm which cameras existed on June 29, 2021.

### B. Relevant documents referenced at CNB's 30(b)(6) deposition on September 23, 2024.

On September 23, 2024, I deposed the Bank pursuant to a 30(b)(6) deposition, during which Michelle Pedzich was designated as a person authorized to speak on behalf of the Bank. During this deposition, CNB identified documents that are relevant and responsive to Plaintiff's First and Second Sets of RFPs, and should be disclosed, as follows below.

Meetings concerning Plaintiff's suspension and termination. Ms. Pedzich testified that there were meetings involving her and other individuals at the Bank that was noticed via email concerning Plaintiff and his possible suspension and termination.[2] Please provide any relevant documents concerning these meetings, including without limitation calendar notices, emails, or any notes individuals took concerning the meeting or Plaintiff. Such documents are, at minimum, responsive to Plaintiff's 1st Set of RFP Nos. 1, 2, and 32.

Plaintiff's use of leave time in 2021. An email the Bank produced, bates-stamped DEF00338, provides information about how much vacation and sick time Plaintiff had used as of June 2021. Please produce documents showing exactly how and when Plaintiff used such vacation sick time in 2021, such as Plaintiff's paystubs showing accrued and used leave time. Such documents are, at minimum, responsive to Plaintiff's 1st Set of RFP No. 8.

Native file of the Straight Talk Wireless pictures. Ms. Pedzich testified that she believed that either Jason Ingalls or Joseph Hernandez took the picture of the Straight Talk Wireless phone found in Exhibit M of the Bank's Position Statement filed with the EEOC.[3] I am requesting the native file of such photograph with metadata in an attempt to determine the date, time, and location of when and where the pictures were taken. Such documents are, at minimum, responsive to Plaintiff's 1st Set of RFP Nos. 1, 2, 21, 32. *See also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) ("electronic documents are no less subject to disclosure than paper records.")

Communications concerning surveillance footage. Ms. Pedzich testified that relevant video clips, including some disclosed in this litigation, were previously provided to her, either through a shared folder or via email.[4] Please provide any relevant documents and communications concerning the sharing of such videos. This would include a screenshot of what was included in the shared folder, and the videos included. Such documents are, at minimum, responsive to Plaintiff's 1st Set of RFP Nos. 1, 2, 21, 32.

Communications concerning a litigation hold. Ms. Pedzich testified that Ms. Weidner's August 6, 2021 litigation hold memorandum, disclosed as bates-stamp DEF00435-37, was provided to certain individuals, who were then requested to acknowledge receipt of such email.[5]

---

[2] Tr. 45: 20-22
[3] Tr. 75:20-76:5
[4] Tr. 109:10-20
[5] Tr. 112:3-19

October 7, 2024
Page 4

Please disclose all relevant communications concerning this litigation hold, including the emails referenced. Such documents are, at minimum, responsive to Plaintiff's 1st Set of RFP Nos. 1, 2, and 36.

Receipt of EEOC notice. Ms. Pedzich testified that she received the EEOC notice bates-stamped as DEF00439-440 via email. Please provide such email. Such documents are, at minimum, responsive to Plaintiff's 1st Set of RFP Nos. 1 and 2.

Computer log-ins by Jason Ingalls on Jason Wemes' computer. Ms. Pedzich testified that the Bank is able to determine who logged on with their credentials on someone's computer.[6]

Paragraph 30 of Plaintiff's Complaint alleges that: "At times, Ingalls would log in with his own credentials on the computer in Wemes' cubicle." Your Answer denies this allegation. Plaintiff's 1st Set of RFPs No. 13 requests "All documents and communications concerning your denial of the allegations in paragraph 30 of the Complaint." Further, CNB's response to Plaintiff's First Set of Interrogatories No. 16 was as follows:

> **INTERROGATORY NO. 16**: Identify each Bank employee or other person working on behalf of the Bank who logged into the computer(s) located at Plaintiff s former cubicle at the Bank from January 1, 2021 to July 13, 2021.
>
> Please provide a complete copy of all documents concerning your answer.
>
> **RESPONSE**: Defendant objects to this Interrogatory on the grounds that the scope of information sought is grossly overbroad and vague. Specifically, use of the term "each" necessarily calls for speculation and would entail the production of information unrelated to the claims or legitimate defenses alleged in this matter and is not in accordance with the proportionality in discovery required by Rules 26(b)(l) and 33(a)(2), as amended, effective December 1, 2015. Defendant further objects to this Interrogatory on the grounds that is seeks information outside of the relevant timeframe of Plaintiff s claims. Defendant further objects to this Interrogatory on the grounds that the information it seeks is far outweighed by the burden in ascertaining such information. As such, this Interrogatory is intended solely to harass. Subject to and without waiving the foregoing objections, Defendant responds as follows:
> Upon information and belief, Plaintiff.

Further, Plaintiff's 1st Set of RFPs No. 34 requested "All documents and communications concerning your answers to Plaintiffs' First Set of Interrogatories."

Please respond fully to Interrogatory No. 16 and provide any relevant documents.

Records of the Bank providing a physical phone to Mr. Wemes. Ms. Pedzich testified that if the Bank provided a physical phone to Mr. Wemes, it might have records of this.[7] Please review and provide. If no such documents exist, please specify.

---

[6] Tr. 89:16-90:2
[7] Tr. 91:15-18.

October 7, 2024
Page 5

### C. Documents the Bank will not disclose absent a Court Order.

<u>2nd Set of RFPs. No. 16-18: the Bank's gross income, net income, and net worth</u>

These requests seek documents concerning the Bank's financial statements for purposes of a potential punitive damages award. The Bank has responded that it will not provide such documents absent a Court Order. Documents concerning the Bank's finances, however, are relevant. "Because a defendant's financial circumstances, wealth or net worth may be considered in determining an award of exemplary damages, defendant's financial information is relevant to plaintiff's claim for punitive damages." *See EEOC v. Frontier Hot-Dip Galvanizing, Inc.*, No. 16-CV-0691V(SR), 2023 WL 4999831, at *5 (W.D.N.Y. Aug. 4, 2023). Given that Plaintiff has sought a jury trial, "pre-trial discovery of defendant's financial information is most efficient." *See id.* Please provide.

### II. Designation of Additional Persons for CNB's 30(b)(6) Deposition on the Following Topics.

#### A. Overview of Rule 30(b)(6).

As outlined in *Klosin v. E.I. Du Pont De Nemours & Co.*:

Rule 30(b)(6) serves several purposes. First, the Rule was designed to simplify problems lawyers seeking corporate testimony faced due to the difficulty of figuring out whether a corporate agent was a "managing agent" qualified to testify for the organization. Second, the Rule purported to curb the practice of "bandying," a tactic by which corporate executives tried to avoid revealing damaging evidence by giving vague or contradictory testimony. Rule 30(b)(6) addressed this problem by requiring the company to choose witnesses with knowledge whose testimony would be considered binding upon the organization. Third, the Rule was designed "to promote efficient discovery by eliminating the need for lawyers to waste time and money deposing multiple corporate employees to find the ones with pertinent information by making the company responsible for identifying witnesses with knowledge of relevant subject matter."

No. 119CV00109, 2023 WL 1097859, at *2 (W.D.N.Y. Jan. 30, 2023).

An organization has a duty to prepare its 30(b)(6) designee with information "known or reasonably available" in response to the noticed topics. The organization "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (cleaned up). An unprepared designee on certain topics is "tantamount to a failure to appear, and warrants the imposition of sanctions." United Technologies Motor Systems v. Borg-Warner Automotive, No. 97-71706, 1998 WL 1796257, at *2 (E.D. Mich. Sept. 4, 1998).

During the Bank's 30(b)(6) deposition, Ms. Pedzich acknowledged that she lacked all "information known or reasonably available to the" Bank concerning the topics below.

October 7, 2024
Page 6

  7. <u>The hourly rate of pay Plaintiff could have received from CNB if he was not suspended in June 2021 and terminated in July 2021.</u>

  Ms. Pedzich testified that she did not know how much Plaintiff's would have earned if he was not terminated in 2021 because such information was contained in a "raise grid" to which she did not currently possess.[8] Please designate a person to provide such information.

  9. <u>Communications involving CNB employees concerning Plaintiff or the physical presence of law enforcement at CNB's Main Street Branch on June 29, 2021 with other CNB employees, the OCSO, the CPD, or any other Persons on or after June 29, 2021.</u>[9]

  Ms. Pedzich testified that she did not communicate with law enforcement on June 29,[10] but Jason Ingalls and Joseph Hernandez did,[11] and that Jason Ingalls communicated with law enforcement bout "once or twice"[12] between June 30 and July 12, the respective dates Plaintiff was suspended and then terminated. Besides reiterating that law enforcement communicated that it believed Plaintiff was their prime suspect, she did not know the substance of communications with law enforcement or on what dates. As Ms. Pedzich indicated Mr. Ingalls was the key contact person with law enforcement and would have such information, please designate him for this topic.

  12. <u>CNB's investigation into the alleged misconduct by Plaintiff on or after June 29, 2021.</u>

  Ms. Pedzich testified that the Bank's investigation of Plaintiff's alleged misconduct included communications with law enforcement on June 29.[13] She, however, did not communicate with law enforcement on that date, and was unaware of what communications consisted of outside the memos authored by Mr. Ingalls and Mr. Hernandez.

  She was also unaware if anyone at the Bank had requested the pictures law enforcement possessed of the suspect, but said Mr. Ingalls would know.[14] She also testified that Mr. Ingalls and Mr. Hernandez searched the CNB owned van, but did not know what they discovered.[15] Please designate Mr. Ingalls to respond to questions for this topic.

  24. <u>Any steps taken to preserve documents or electronically stored information in connection with Plaintiff's suspension, his EEOC complaint, or this lawsuit.</u>

  The Bank's designee was unsure what video surveillance footage exists besides that disclosed in this lawsuit, or what steps were taken to preserve relevant footage, but stated that Mr. Ingalls or Mr. Hernandez compiled the video footage disclosed in this litigation.[16] Please designate either individual to respond to questions for this topic.

---

[8] Tr. 24:8-25
[9] Tr. 32-45.
[10] Tr. 52:21-53:2
[11] Tr. 39:1-40:4
[12] Tr. 42:8-44:7
[13] Tr. 58:9-18.
[14] Tr. 60:15-20.
[15] Tr. 62:9-63:2
[16] Tr. 99:11-24; 102:15-103:5.

October 7, 2024
Page 7

      26.    <u>The position/location of all video cameras at the Main Street Branch between June 29, 2021 and July 12, 2021.</u>

      Ms. Pedzich did not know where CNB's cameras were during this time period, but that either Mr. Ingalls, Mr. Hernandez, or Ms. Wagner would be better suited to respond to questions for this topic.[17] Please designate one of these individuals to respond to questions for this topic.

### III.    Date for Physical Inspection.

      In my September 18 email, I noted that my client and I were available to inspect the Bank on certain dates in early October. I have not received a response. Please advise on what dates might work for you and your client so we can schedule this.

### IV.    Conclusion

      I look forward to hopefully resolving these issues without court intervention. Thank you.

      Sincerely,

      Gregory L. Silverman

---

[17] Tr. 100:17-101:20; 103:24-104:16.