# G. Silverman Declaration
# Exhibit 25



© Copyright 2024, vLex Fastcase. All Rights Reserved.
Copy for use in the context of the business of the vLex customer only. Otherwise, distribution or reproduction is not permitted

# People v. Leach, CR13–0050.

| | |
|---|---|
| **Decision Date:** | 03 June 2013 |
| **Docket Number:** | No. CR13–0050., CR13–0050. |
| **Citation:** | 2013 N.Y. Slip Op. 50890, 972 N.Y.S.2d 145, 39 Misc.3d 1235 |
| **Parties:** | The PEOPLE of the State of New York v. Amanda R. LEACH, Defendant. |
| **Court:** | New York City Court |

**Id. vLex Fastcase:** VLEX-884562320

**Link:** https://fastcase.vlex.com/vid/people-v-leach-no-884562320

**Text**

**39 Misc.3d 1235**

**972 N.Y.S.2d 145**

**2013 N.Y. Slip Op. 50890**

**The PEOPLE of the State of New York**

**v.Amanda R. LEACH, Defendant.**

**No. CR13–0050.**

**City Court, City of Canandaigua, New York.**

**June 3, 2013.**

OPINION TEXT STARTS HERE

R. Michael Tantillo, Esq., Ontario County District Attorney, Assistant District Attorney David P. Dys, Esq., of counsel, for People.

Leanne G. Lapp, Esq., Ontario County Public Defender, Assistant Public Defender Jonathan R. Lorge, Esq., of counsel, for Defendant.

**STEPHEN D. ARONSON, J.**

PF-000362

This case holds that, under the circumstances presented, there is no implied waiver of *Miranda* rights when there is no meaningful exchange about whether the defendant understood her warnings and no exchange about whether the defendant, bearing in mind her rights, nevertheless wished to speak to the police.

In this prosecution for prostitution, the defendant moved to suppress her statements to law enforcement officers on the grounds that the statements were involuntary. A *Huntley* hearing was held on April 15, 2013, and the attorneys submitted arguments on April 18, 2013. Detective Daniel Visingard and Investigator Scott Kadien testified for the people. Their testimony was entirely credible and believable in all respects except for one glaring difference as hereinafter set forth.

On January 16, 2013, Detective Visingard interviewed the defendant after placing her in custody during a prostitution investigation. The interview took place at a small interior room in the Canandaigua Police Department. The interview began at about 7:35 p.m. After about a half-hour of questioning by Detective Visingard, Investigator Kadien interviewed the defendant for about 15 minutes. The entire interview was videotaped. The videotape was offered and received into evidence. The small interview room at the Canandaigua City Police Department has a small table with two chairs. The defendant was seated on a chair at the table when Detective Visingard entered the room. The defendant was not handcuffed.

Detective Visingard testified that the defendant was given her *Miranda* warnings from memory. The following questions and answers were given at the hearing:

Q. "Prior to [speaking with her] did you advise her of any rights or warnings?"

A. "I did, her *Miranda* warnings."

Q. "Did you use anything to assist you to administer them or did you give the *Miranda* warnings from memory?"

A. "From memory."

Q. "Here on the record could you please recite precisely how and what you stated to the defendant to advise her of her rights?"

A. "Sure, that she has the right to remain silent. Anything she says can and will be used against her in a court of law, that she has the right to an attorney. If she cannot afford an attorney one will be provided without cost."

Q. "Again, is that exactly what you said to the defendant?"

A. "It is."

Q. "What did you say to her next?"

A. "If she understood what I was advising her. She stated that she did. Did she have a problem talking with me."

Q. "And she indicated she would speak with you with these rights in mind?"

A. "She did."

Q. "And did you then discuss the offense you were investigating?"

A. "I did."

In other words, Detective Visingard testified that the defendant explicitly waived her rights, i.e., he testified that she said she understood the warnings and that she was willing to speak with him with her rights in mind. However, the videotape of the interview shows that Detective Visingard explained the *Miranda* warnings to the defendant at about six minutes into the interview, without stopping and without giving the defendant an opportunity to respond. There was no opportunity for the defendant to acknowledge that she understood her rights, and there was no express waiver. According to the videotape, Detective Visingard told the defendant:

"You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you cannot afford an attorney, one will be provided to you without cost. Do you understand that? Nobody's threatened you in any way? Nobody's promised you anything? Nobody's hurt you or anything like that? You can read and write?"

There was no chance for the defendant to respond to any of his questions, no chance for the defendant to indicate whether she understood the rights given to her, and no exchange about whether the defendant wished to speak to the officer with these rights in mind. Despite Detective Visingard's testimony that the defendant indicated she understood her rights and was willing to speak to him with her rights in mind, the videotape clearly shows that this exchange or express waiver never happened.

The question whether a defendant has effectively waived his or her *Miranda* rights must be determined on the particular facts and circumstances surrounding a case, including the background, experience, and conduct of the accused (*North Carolina v. Butler,* 441 U.S. 369, 374–375 [1979] ). An explicit verbal waiver is not required; an implicit waiver may suffice and may be inferred from the circumstances (*People v. Smith,* 217 A.D.2d 221, 234 [4th Dept, 1995] citing *North Carolina v. Butler, id.,* and *People v.. Goncalves,* 288 A.D.2d 883 [4th Dept, 2001], *lv denied* 97 N.Y.2d 729 [2002] ). "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived' his *Miranda* rights" ( *People v. Smith, id., at 234*, citing *Fare v. Michael C,* 442 U.S. 707 at 724, quoting *North Carolina v.. Butler, id.* at 373). In *North Carolina v. Butler, id.,* the defendant refused to sign a written "advice of rights" form after reading it and replying that he understood his rights when asked. The Supreme Court held that an explicit statement of waiver is not invariably necessary ( *id.*).

Here, the people contend that the defendant implicitly waived her rights and spoke to Detective Visingard The people rely on *People v. Sirno,* 76 N.Y.2d 967 (1990), and *People v. Goncalves,* 288 A.D.2d 883 (4th Dept, 2001). In *People v. Sirno, id.,* the detective gave the defendant a *Miranda* card in Spanish. The defendant was directed to read the card and wrote "yes" next to each statement. The Court of Appeals held that the defendant implicitly waived his *Miranda* rights. In *People v. Goncalves, id.,* the decision does not reflect the exact circumstances justifying the court's conclusion that there was an implied waiver. However, the record on appeal shows that the defendant was stopped after leading the police in a motorcycle chase across a football field and a softball field ( *People v. Goncalves,* Record on Appeal, people's brief, 2). The


defendant was tackled by police, advised of his *Miranda* rights, and asked by police why he didn't stop. The defendant was not a novice in the criminal justice system, having had eight prior arrests ( *People v. Goncalves,* Record on Appeal, people's brief, 2–3). The facts in these two cases are distinguishable from the case at bar. Likewise in *People v. Hale,* 52 AD3d 1177 (4th Dept, 2008), the appellate court upheld a lower court determination that defendant implicitly waived his *Miranda* rights. Although the circumstances of the implied waiver are not mentioned in the decision, the circumstances are contained in the record on appeal. The record on appeal shows that police arrived at a City of Buffalo residence with an arrest warrant and that a police officer read the defendant's rights from a card. The officer did not read the "waiver" part of the card, but he did ask the defendant if he understood his rights. The defendant replied that he did ( *People v. Hale,* Record on Appeal, defendant's brief, 4). Under those circumstances, the appellate court held that there was an implied waiver. Similarly, a defendant may effectively waive his right to remain silent by agreeing to talk although he rejects signing a written waiver (*People v. Rodriguez,* 101 A.D.2d 555 [4th Dept, 1984] ).

Here, there was no written waiver. The defendant's *Miranda* rights were read to the defendant by memory and were deficient in the following respects: (1) there was no meaningful recitation about the defendant's right to appointment of counsel free of charge before any questioning took place; (2) there was no warning that the defendant could decide at any time to exercise her rights and not answer any questions or make any statements; (3) there was no meaningful exchange about whether the defendant understood each of her rights as explained to her; and (4) there was no question whether, having these rights in mind, she wished to talk to the police. Furthermore, it does not appear that the defendant has any significant experience with the criminal justice system. Under these circumstances, this court holds that the defendant did not implicitly waive her *Miranda* rights.

Accordingly, the motion of the defendant to suppress the statements is hereby granted.