UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON WEMES,

Plaintiff,

Case No.: 22-cv-06297 (MAV) (MWP)

- against -

THE CANANDAIGUA NATIONAL BANK
& TRUST COMPANY,

Defendant.

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE CANANDAIGUA NATIONAL BANK & TRUST COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND ATTORNEYS' FEES**

---

UNDERBERG & KESSLER LLP
*Attorneys for Defendant*
*The Canandaigua National Bank*
*& Trust Company*
300 Bausch & Lomb Place
Rochester, New York 14604
Tel.: (585) 258-2865

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................................................ ii

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ............................................................................................................................. 2

    I.  **Wemes Fails to Raise any Legitimate Issue of Material Fact
Concerning His Claim of Unlawful Sexual Orientation-Based Discrimination** .......... 2

    II.  **Wemes Fails to Raise any Legitimate Issue of Material of Fact
Concerning His Claim of Unlawful Retaliation** ............................................. 6

    III.**Wemes Fails to Raise any Legitimate Issue of Material of Fact
Concerning His Claim of Unpaid Wages** ....................................................... 8

    IV. **An Award of Attorney's Fees is Appropriate Given Wemes' Baseless Conduct** ........ 10

**CONCLUSION** ..........................................................................................................................11

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Hill v. Loughren*,
No. 18-CV-6022 (EAW), 2024 WL 2832620 (W.D.N.Y. June 4, 2024)....................................... 3

*ITC Ltd. v. Punchgini, Inc.,*
482 F.3d 135 (2d Cir.) ........................................................................................................... 6

*Johnson v. Xerox Corp.*,
838 F. Supp. 2d 99 (W.D.N.Y. 2011) ..................................................................................... 6

*Kerzer v. Kingly Mfg.*,
156 F.3d 396 (2d Cir. 1998) .................................................................................................. 6

*Kolesnikow v. Hudson Valley Hosp. Ctr.*,
622 F. Supp. 2d 98 (S.D.N.Y. 2009) ..................................................................................... 9

## PRELIMINARY STATEMENT

Defendant, The Canandaigua National Bank & Trust Company ("CNB"), by and through its counsel, Underberg & Kessler LLP, respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment filed on May 28, 2025 [ECF Doc. No. 48], pursuant Fed. R. Civ. P. 56, dismissing each of the pending Causes of Action of the First Amended Complaint filed January 6, 2025, and, pursuant to 42 U.S.C.A. § 2000e-5(k), for an award of its reasonable attorney's fees should the Court see fit to grant CNB's dispositive motion.

The Record evidence in support of the pending motion is set forth in CNB's Local Rule 56(a)(1) Statement of Material Facts Not in Dispute, dated May 27, 2025 ("SOF") [ECF Doc. No. 48-42], together with the relevant, admissible evidence upon which the SOF is based: the accompanying Affidavit of Ryan T. Biesenbach, Esq., sworn to on May 27, 2025, together with Exhibits "A" through "Z" ("RTB Aff.") [ECF Doc. Nos. 48-1 through 48-27]; the Affidavit of Michelle Pedzich, sworn to May 22, 2025, with Exhibits "A" through "L" ("MP Aff.") [ECF Doc. Nos. 48-39 through 48-41]; and the Affidavit of Daniel Visingard, sworn to May 14, 2025 ("DV Aff.") [ECF Doc. No. 48-28]. This Memorandum of Law incorporates CNB's May 27, 2025 Memorandum of Law [ECF Doc. No. 48-43] (the "Initial Memorandum") and will use the terms as defined in the Initial Memorandum.

The response to CNB's pending motion is set forth in the Declaration of Plaintiff, Jason Wemes ("Wemes"), dated June 30, 2025 [ECF Doc. No. 50-2] and the Declaration of Gregory L. Silverman ("Silverman"), dated June 30, 2025 [ECF Doc. NO. 50-3] (collectively, the "Response").

As anticipated, Wemes devotes nearly the entirety of the Response in the irrelevant attempt to discredit Law Enforcement personnel and the Investigation. It is respectfully submitted that this Court should not be persuaded by the proverbial, and numerous, red herrings he continues to offer.

The soundness of Law Enforcement's conclusions, the inconsistent memories of Wemes' uninvolved third-party coworkers concerning the events of the Investigation, and Wemes' unnecessary pursuit of extraneous surveillance footage concerning CNB's other employees who were not the subject of the Investigation, are wholly distinct from the actual issues of whether Wemes' suspension and/or termination were motivated by his sexual orientation or unlawful retaliation.

Indeed, despite from Wemes' continued and unsupported attempts to baselessly portray Ingalls as having "convinced" Law Enforcement that he was the suspected sexual predator or his irrelevant second-guessing of Law Enforcement's determination, there is no legitimate dispute that his suspension/termination from CNB were both the direct result of it having been advised he was a suspected child predator by outside third parties and its reasonable reliance on that advisement. Wemes' ongoing and disingenuous disbelief that he was not independently identified as the suspect of the Investigation is also of no moment and belies any standard of appropriate conduct. As a matter of well-settled law, Wemes' incredulity is insufficient to defeat summary judgment.

Accordingly, for the reasons set forth more fully below and in the Initial Memorandum, it is respectfully submitted that the Court grant CNB's pending requests in their entirety.

## <u>ARGUMENT</u>

I.   **Wemes Fails to Raise any Legitimate Issue of Material Fact
     Concerning His Claim of Unlawful Sexual Orientation-Based Discrimination**

As set forth in the Initial Memorandum, as this matter progressed and, more specifically, following the depositions of certain Law Enforcement personnel – namely, Detective Daniel Visingard of the Canandaigua Police Department and Investigator Nathan Bowerman of the Ontario County Sheriff's Office – Wemes adopted the patently frivolous and unsupported conspiracy theory that his Supervisor, Jason Ingalls ("Ingalls"), and Detective Visingard were "best friends," thus enabling Ingalls to somehow "taint" the Investigation. *See* [ECF Doc. No. 50-1, at ¶

2

92]. In his Response, Wemes unsuccessfully attempts to develop from and walk back aspects of his ridiculous testimony, as follows:

> While I was at my cubicle, I heard and saw Vince Yacuzzo (CNB's Chief Financial Officer), Ingalls, and Visingard standing about 20 feet away and talking being together [*sic*] at youth sporting events and a golf course, Mr. Yacuzzo's new grill, and how they had gone on a wine tasting with their wives and wanted to set up a time to go on another one.

[ECF Doc. No. 50-2, at ¶ 35]. Wemes cites nothing but this self-serving, fabricated allegation in an attempt to generate a factual issue in response to the undeniable fact that Law Enforcement personnel independently identified him as the suspect of the Investigation without Ingalls' having "convinced" them of this conclusion.

In this respect, Wemes does not legitimately dispute that Detective Visingard and Ingalls did not know each other prior to June 29, 2022. *See* [ECF Doc. No. 50-a, at ¶ 93] ("Disputed. Wemes overheard Visingard and Ingalls having a conversation which suggested they spent time together" and citing to ¶ 168 as its Record authority); *see also id.* at ¶ 168 (restating the allegation at ¶ 35 of Wemes' Declaration [ECF Doc. No. 50-2] and citing the same allegation as its authority). In fact, Wemes' conspiracy theory that Ingalls had any bearing or persuasion in the Investigation is supported nowhere in the Record outside of this hearsay-laden allegation. Notwithstanding the fact that Weme's alleged overhearing is not, in any way whatsoever, probative of the issue of whether his suspension and/or termination were motivated by his sexual orientation, he cannot rely on fabricated inadmissible hearsay to escape summary judgment. *See Hill v. Loughren*, No. 18-CV-6022 (EAW), 2024 WL 2832620, at *6 (W.D.N.Y. June 4, 2024) ("A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial") (quoting *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015)).

Wemes also does not legitimately dispute the fact that Law Enforcement independently identified him as the suspect. *See* [ECF Doc. No. 50-1, at ¶ 74 (attempting to dispute that "Law Enforcement concluded that Wemes was the suspect of the Investigation" by citing to Investigator Bowerman's testimony that he formed his belief that Wemes was the sought-after sexual predator "a little while after as we continued the [I]nvestigation"). Moreover, other than Ingalls advising Law Enforcement that Wemes liked to drink Mountain Dew (which, it should be remembered, has no bearing on an individual's sexual orientation), Wemes does not legitimately dispute the fact that Ingalls had no actual impact on the Investigation or over Law Enforcement's determination that Wemes was the suspect. *See* [ECF Doc. No. 50-1, at ¶¶ 89 through 92. 94].

To be clear, Wemes requires this manufactured causal link to raise an inference of discrimination that is otherwise absent from the Record between his alleged and unsupported, homophobic mischaracterization of Ingalls, Law Enforcement's conclusion, and his suspension and/or termination. Put differently, because the Record is completely devoid of any evidence that Wemes suffered any adverse employment action due to his sexual orientation (*see*, *e.g.*, [ECF Doc. No. 50-1, at ¶¶ 36 through 39, 41 through 44, 47 through 49, 51 through 53 (Wemes not disputing, or improperly attempting to qualify a fact to generate a nonexistent issue, that he suffered no adverse action with respect to the conduct he alleges of Ingalls or in response to the activity he claims to have engaged)), some factual contradiction needs to exist concerning the motivation for Wemes' suspension/termination in order for the claims of unlawful discrimination to survive. No such legitimate, material issue of fact exists.

Indeed, Wemes does not dispute that on June 29, 2021, Law Enforcement advised him that he was the suspected child predator and that he understood this fact on that day. *See* [ECF Doc. No. 50-1, at ¶¶ 77 and 78]. He does not legitimately dispute the fact that Law Enforcement advised

him the reasons why he was identified to be the suspect. *See id.* at ¶ 79. Similarly, Wemes does not legitimately dispute the fact that on that same day, Law Enforcement advised CNB that he was the suspect of the Investigation but that there was insufficient evidence to press charges. *See id.* at ¶¶ 82 and 83. Wemes also does not dispute that CNB had no involvement in Law Enforcement's appearance at its offices on June 29, 2021, or that, as CNB's active-duty Security Personnel, Ingalls and Hernandez were duty-bound to inform CNB of potentially unlawful activity conducted by an employee, as well as the information learned from Law Enforcement. *See id.* at ¶¶ 85, 88. And, importantly, Wemes does not legitimately dispute the fact that, at all relevant times, he has understood that his suspension and termination were both the result of the Investigation. *See id.* ¶¶ 101, 107. Thus, there is no genuine issue of material fact that Wemes was suspended/terminated because CNB was advised by Law Enforcement that he had been identified as a sexual predator suspect on June 29, 2021.

Apart from Wemes' self-serving averments that he was incorrectly identified as the suspect due only to Ingalls' alleged phantom involvement, his allegation is supported by nothing within the admissible Record save for Wemes' speculation. *See id.* at ¶¶ 77, 78, 79, 84 ("[L]aw [E]nforcement did not believe Wemes was their suspect after their initial basement encounter, and only advised Wemes he was a suspect after Ingalls became involved"), ¶ 90 ("Even assuming it could be credited on summary judgment that [L]aw [E]nforcement advised Ingalls that Wemes was the suspect, it was because of Ingalls' involvement in the investigation"), and ¶ 90 ("Wemes testified that law enforcement's presence 'was a perfect opportunity [for Ingalls to] get me involved in an investigation that would get me terminated'"). As a matter of well-settled law, Wemes' disingenuous doubts about the Investigation and his speculation regarding Law Enforcement's determination are insufficient to raise a triable issue of fact sufficient to withstand summary

judgment. *See Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 104 (W.D.N.Y. 2011) ("a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a 'metaphysical doubt' concerning the facts") (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact"); *ITC Ltd. v. Punchgini, Inc.,* 482 F.3d 135, 151 (2d Cir.) *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir.) ("conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment"), *certified question accepted,* 8 N.Y.3d 994, 870 N.E.2d 151 (2007), and *certified question answered,* 9 N.Y.3d 467, 880 N.E.2d 852 (2007), *cert. denied,* 552 U.S. 827 (2007).

Wemes has failed to submit material issues sufficient to rebut the fact that CNB suspended and terminated his employment because Law Enforcement advised it that there was "no doubt" Wemes had attempted to solicit a boy to their offices for sex. The metaphysical doubt he improperly attempts to cloud the Record concerning Law Enforcement, the Investigation, and CNB's retention of extraneous surveillance footage is wholly irrelevant to the issue of whether CNB's employment decisions were motivated because he is gay. There is no admissible evidence whatsoever that Wemes suffered any adverse employment action on account of his sexual orientation.

Accordingly, it is respectfully submitted that Wemes' claims of unlawful discrimination in violation of Title VII and the HRL should be dismissed in their entirety.

## II.    Wemes Fails to Raise any Legitimate Issue of Material of Fact Concerning His Claim of Unlawful Retaliation

As demonstrated in the Initial Memorandum, at no point in time did Wemes engage in a legally protected activity. The Declaration he submits with his Response fails to rehabilitate his earlier deposition testimony that he never actually engaged in such an activity. *See* [ECF Doc. No. 50-3,

at ¶ 9 (limiting his "complaints" to: "I asked Ingalls why he thought that"), ¶ 10 ("I asked him why this picture was inappropriate…"), ("I responded that gender pronouns should not be a joking matter" to a comment made by another CNB employee, Barb Wagner), ¶ 12 ("I asked him what my personal life had to do with work"), and ¶ 14 ("I asked him if there was an issue with me"); *see also Johnson*, 838 F. Supp. 2d at104 (W.D.N.Y. 2011) ("the party opposing summary judgment 'may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony'") (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). Apart from using buzzwords in an improper attempt to depict these actions as "opposition," Wemes advances nothing to bring his conduct into the realm of protected activity.

Similarly, Wemes advances nothing beyond pure speculation in attempting to link the handful of alleged inappropriate interactions with Ingalls to his suspension/termination. Even in a favorable light and viewing Wemes' action as protected (which they are not), as set forth above, he suffered no adverse employment action due to these alleged activities. *See*, [ECF Doc. No. 50-1, at ¶¶ 36 through 39, 41 through 44, 47 through 49, and 51 through 53]. He has thus failed to establish a *prima facie* case of retaliation.

Simply put, Wemes has failed to posit any material fact calling into question his admissions to the fact that his suspension and termination were both the direct and proximate result of Law Enforcement advising CNB that he was a suspected sexual predator on June 29, 2021. He has failed to raise a triable issue of fact to rebut this legitimate, nonretaliatory reason for his separation from CNB.

Accordingly, it is respectfully submitted that Wemes' claims of unlawful retaliation in violation of Title VII and the HRL should be dismissed in their entirety.

**III.    Wemes Fails to Raise any Legitimate Issue of Material of Fact
          Concerning His Claim of Unpaid Wages**

In his responsive argument, Wemes appears to limit his claim arising under the New York

Labor Law ("NYLL") to forty-nine (49) hours of vacation time he alleges was not paid at his

termination. His argument is nothing more than misstatements of both fact and law.

Nowhere in the Record – including within Wemes' termination letter – did CNB "agree" to pay

him accrued, unused vacation time. *See* [ECF Doc. No. 50 at p. 23]. Rather, the letter provided to

Wemes concerning his termination contains, in pertinent part:

> This letter confirms your end of employment with [CNB] on July
> 12, 2021. **Your final pay, which includes your regular pay and
> payment for accrued, unused vacation time, will be deposited on
> July 16, 2021.**

Pedzich Aff. at **Exhibit G**, DEF00121 [ECF Doc. No. 48-36] (emphasis added). This letter is thus,

by no objective metric, an enforcement agreement but rather, and simply, the memorization of

Wemes' termination and his final wages.

To that end, Weme's citation to *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98,

120 (S.D.N.Y. 2009) is misplaced. In that matter, the Court declined summary judgment because

of completing interpretations of the employer's written policy concerning the payout of accrued

but unused vacation time at termination. *See id.* at 120.

Here, Wemes does not dispute that CNB's policies provide that accrued but unused vacation

and sick time are not paid out when an employee is terminated. *See* [ECF Doc. No. 50-1, at ¶ 5].

These policies, which appear in several places within CNB's published Employee Handbook,

provide, in pertinent part:

> **UNUSED VACATION**
> Employees who resign voluntarily giving at least two weeks
> advance notice will be paid for earned but unused vacation. Earned
> but unused vacation will not be paid to employees who resign with

8

less than the specified advance notice or to employees who are terminated by the Company.

**UNUSED SICK TIME**
Unused sick time is not paid upon termination.
…

**VACATION PAY AT TERMINATION**
Employees who resign voluntarily giving at least two weeks advance notice, will be paid for *accrued* but unused vacation time. Accrued but unused vacation time will not be paid to employees who resign with less than the specified advance notice or to employees who are terminated by the company.
…

**PAID SICK TIME AT TERMINATION**
Unused sick time is not paid upon separation from employment.

Pedzich Aff. at **Exhibit A**, DEF00244, DEF00273, and DEF00277 [ECF 48-30] (emphasis in original). Thus, there is no disagreement as in *Kolesnikow* and Wemes has no "agreed" to entitlement to his accrued but unused vacation time, but just the opposite.

Moreover, the figure cited by Wemes to support his argument – specifically, the "116" hours of vacation time, of which "16" were used, "leaving 100 hours of vacation hours remaining" [ECF Doc. No. 50 at p. 23] – is a misquotation of the evidence referenced. The internal CNB email that Wemes cites concerning the processing of his final paycheck provides:

> He had 116 hours [of accrued vacation time] to use. He used 67 and we paid the rest out in his paycheck. He used 72 hours personal and 18 hours sick time.

[ECF Doc. No. 50-26, at DEF00338]. Thus, mathematically, at the time of his termination Wemes had available to him approximately forty-nine (49) hours of vacation time; in his final paycheck, he was compensated, without entitlement, for fifty-one (51) hours of vacation time. *See* Pedzich Aff. at **Exhibit F**, DEF00353 [ECF Doc. No. 48-35]. Wemes was thus over-compensated.

Importantly, Wemes does not dispute the facts that he was an hourly employee who performed no work after June 30, 2021, but who nonetheless received compensation for time that he performed no work. *See* [ECF Doc. No. 50-1, at ¶¶ 108, 110-111]. His remaining contentions are either irrelevant or inaccurate based on the Record and status of the law. Wemes is owed nothing.

For the reasons set forth herein and in the Initial Memorandum, it is respectfully submitted that Wemes' knowingly frivolous claim brought pursuant to the NYLL should also be dismissed.

## IV.     An Award of Attorney's Fees is Appropriate Given Wemes' Baseless Conduct

Wemes does not legitimately dispute that his suspension and termination were the result of CNB being advised by Law Enforcement that he was suspected of attempting to lure a minor onto into property for sex on June 29, 2021. *See*, *e.g.,* [ECF Doc. No. 50-1, at ¶¶ 101, 107]. Rather, as he has done throughout this matter and prior to its inception, Wemes has completely ignored these facts and litigated the Investigation.

There is no legitimacy to this strategy. There is absolutely no admissible evidence rebutting the fact that Law Enforcement made the determination that Wemes was the suspect, without any nefarious contribution fom Ingalls. This has been the status of the matter since, at the very least, Wemes was provided a copy of Law Enforcement's Incident Report commensurate with the filing of his initial Complaint, wherein the facts that he already knew – namely, that his  suspension and termination were the direct result of the Investigation – were confirmed and which undoubtedly sets forth the facts that Wemes was considered the suspect, the reasons thereto, and that Law Enforcement advised CNB that there was "no doubt" that he had attempted to lure a child onto its property for sex. Again, Wemes has known, at every conceivable moment, that the circumstances of his suspension/termination were in no manner indicative of unlawful discrimination or retaliation absent the creation of alternative circumstances.

To that end, there is no controversy with respect the Visingard Affirmation [ECF Doc. No. 48-28]. In it, Detective Visingard in no manner contradicts himself. His Affirmation does not state that he, personally, interacted with Wemes in the basement. Rather, what Detective Visingard states is the indisputable facts that Wem was considered the suspect of the Investigation upon his initial interaction with Law Enforcement. *See id.* Wemes' personal belief that he was not is, ultimately, of no avail.

Wemes' current position is further evidence of his bad faith tactics throughout this matter and in attempting to generate nonexistent factual issues to support his meritless claims. The procedural history set forth in the Initial Memorandum is accurate. At all relevant points in time, Wemes has used this Court for the improper and false purpose of scapegoating Ingalls based on an implausible suspicion adopted in the hope of generating an issue of fact. As he has done throughout this litigation, Wemes has knowingly misrepresented and created facts to cast doubt on the quality of Law Enforcement's police work. In so doing, Wemes has completely ignored the fact that each of his pending causes of action are baseless given Wemes' complete and undiminished understanding that his suspension and termination were the direct result of his being identified as a sexual predator by Law Enforcement on June 29, 2021.

Accordingly, should the Court grant CNB's request and dismiss Wemes' claims of unlawful discrimination and retaliation, it is respectfully requested that the Court also exercise its discretion and, because of the knowingly egregious conduct of Wemes in bringing patently frivolous claims, grant CNB an award of its reasonable attorneys' fees.

## **CONCLUSION**

Wemes was suspended and terminated from CNB because its was told by Law Enforcement that there was "no doubt" he attempting to lure a minor onto its property for sex. This fact is beyond

legitimate dispute. He has offered absolutely nothing relevant or admissible to support his preposterous and implausible conspiracy theory that Ingalls "convinced" Law Enforcement to identify him as the suspected pedophile of the Investigation. No reasonable juror could adopt this completely unsupported and manufactured argument.

There is no evidence suggesting that Wemes was suspended or terminated due in any respect to his sexual orientation. There is no evidence suggesting that Wemes was suspended or terminated because of unlawful retaliation. There is no evidence suggesting that CNB suspended or terminated his employment for any other reason than being advised by Law Enforcement that Wemes had been identified as a sexual predator by Law Enforcement on June 29, 2021. There is no evidence that Ingalls guided the Investigation or that Law Enforcement's determination was anything but independent.

Accordingly, for the reasons set forth more above and within CNB's Initial Memorandum, together with the relevant, admissible evidence upon which its submissions are based, it is respectfully submitted that the Court grant CNB's pending requests in their entirety, together with such other and further relief as the Court deems just and equitable.

Dated:    July 15, 2025
        Rochester, New York             **UNDERBERG & KESSLER LLP**
                                   *Attorneys for Defendant*
                                   *The Canandaigua National Bank & Trust Company*

                          By: _____
                                 Ryan T. Biesenbach, Esq.
                                 300 Bausch & Lomb Place
                                 Rochester, New York 14604
                                 Tel: (585) 258-2865
                                 rbiesenbach@underbergkessler.com