UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON WEMES,

                              Plaintiff,

              v.                                              Case No.: 22-cv-06297 (MAV) (MWP)

THE CANANDAIGUA NATIONAL BANK
& TRUST COMPANY,

                              Defendant.

---

## PLAINTIFF JASON WEMES' SURREPLY IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Oral Argument Requested

**GREGORY L. SILVERMAN, ESQ., PLLC**

Dated: July 25, 2025          By:      s/ Gregory L. Silverman
                                       118 Genesee St.
                                       Geneva, NY  14456
                                       Tel: 585-480-6686
                                       greg@silverman-law.com
                                       Attorney for Plaintiff Jason Wemes

## <u>TABLE OF CONTENTS</u>

I.   Introduction...........................................................................................................................1

II.  A reasonable jury could conclude LE did not consider Wemes a suspect after their
     initial interaction...............................................................................................................1

III. A reasonable jury could conclude LE only said Wemes was a suspect because of
     Ingalls' involvement..........................................................................................................2

IV.  Retaliation..........................................................................................................................4

V.   Unpaid wages......................................................................................................................5

VI.  Conclusion..........................................................................................................................5

## I.    Introduction

CNB's overlong Reply only confirms that there are disputed issues of material fact that preclude an entry of summary judgment in its favor. It "disputes" Wemes' testimony on the merits, without any valid argument that it is inadmissible, or that the sham affidavit doctrine might apply. The principle below is apropos here:

> It is hardly an esoteric or difficult concept that summary judgment is appropriate only when the record—including the plaintiff's own competent testimony—fails to demonstrate a genuine issue of material fact. This court is hopeful that someday, competent counsel's undoubted awareness of this principle will trump the insistence by certain segments of the bar (undoubtedly driven to some degree by client expectations) on moving for summary judgment in seemingly every case, regardless of the state of the record.

*Taylor v. eCoast Sales Sols., Ltd.*, 35 F. Supp. 3d 195, 203 (D.N.H. 2014).

## II.   A reasonable jury could conclude LE did not consider Wemes a suspect after their initial interaction

CNB ignores that all facts and reasonable inferences are construed in a light most favorable to Wemes at this juncture. It misreads the record to declare it cannot be disputed LE "independently" identified Wemes as their suspect without the involvement of Ingalls. Not so.

Bowerman and Visingard elicited Wemes' assistance in LE's investigation by showing him a picture of the suspect – which CNB agreed "definitely" did not look like Wemes – and asked if Wemes had seen the suspect. SMF ¶ 131-144. Bowerman did not believe Wemes was a suspect after this interaction. Pl.'s Resp. SMF ¶ 74. As for Visingard: he directly contradicted his prior deposition testimony about this initial interaction in his affidavit supporting CNB's motion. *See* Pl.'s Resp. SMF ¶ 72. He first testified that could not see or hear Wemes during his interaction with Bowerman. *See id.* (*citing* Visingard Dep. 29:13-30:4; 33:13-34:10; 36:3-15). But his later affidavit he testified that Wemes "interact[ed] with *myself* and Investigator

1

Bowerman *in the basement*…." *See id.* (*citing* DV Aff. ¶¶ 12-14). His testimony cannot be credited on summary judgment.

After construing "the facts in the light most favorable" to Wemes, resolving "all ambiguities and draw[ing] all reasonable inferences against" CNB, a reasonable jury could conclude that law enforcement never considered Wemes a suspect during their initial interaction. *See Pucino v. Verizon Wireless Commc'ns, Inc*., 618 F.3d 112, 117 (2d Cir. 2010).

### III.   A reasonable jury could conclude LE only said Wemes was a suspect because of Ingalls' involvement

CNB next argues that Wemes can only "speculate" about whether Ingalls had an "actual impact" in leading LE to say Wemes as a suspect. Reply at 4. But CNB cites no authority to rebut the well-settled law that "summary judgment is improper" when "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." *Chambers v. TRM Copy Centers Corp*., 43 F.3d 29, 37 (2d Cir. 1994). Further, on this issue about Ingalls' involvement, CNB does not dispute that Wemes may rely on "weaknesses, implausibilities, inconsistencies, or contradictions" to show the employer's explanations support a finding of unlawful discrimination. *See Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013); *see also Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150 (2000) ("the trier of fact can infer from the falsity of the explanation that the [witness] is dissembling to cover up" the truth).

Neither does CNB make any attempt to reconcile the wide-ranging stories LE and CNB tell about what the evidence concerning the suspect showed, and how it led them to declare Wemes was the suspect. Pl.'s Resp. SMF ¶¶ 69-71, 76, 140-147, 164. The different stories about when and how Visingard lost the suspect's pictures is itself sufficient to deny summary judgment. Pl.'s Resp. SMF ¶ 73. But perhaps most importantly, CNB is silent about the

inconsistencies concerning when Ingalls initially encountered LE, and LE's testimony that he "escorted" them to speak with Wemes. *See* SMF ¶ 148-156.

Wemes' testimony describing how he overheard Ingalls and Visingard talking about spending personal time outside of work is not inadmissible hearsay. First, the statements of Yacuzzo and Ingalls, as officers of CNB, are admissible. Second, these conversations were occurring during LE's investigation and presence, in which Ingalls was involved because of his position as Director of Security. SMF ¶ 199 (Ingalls testified he was assisting law enforcement determine who could be the suspect). Under Federal Rule of Evidence 801(d)(2)(D), statements "by the party's agent or employee on a matter within the scope of that relationship and while it existed" are admissible as non-hearsay. *See also* Fed.R.Evid. 801(d)(2), advisory comm. notes (the rule calls for "generous treatment of the avenue of admissibility"). Third, Ingalls' response to the statements of Yacuzzo and Visingard in this conversation could also be deemed admissible under the adoption prong. *See* Fed.R.Evid. 801(d)(2)(B); *see also Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd*., 262 F. Supp. 2d 251, 258–59 (S.D.N.Y. 2003) ("Adoption of another's statement can be manifest by any appropriate means, such as language, conduct or silence."). Relatedly, the statements of Yacuzzo and Visingard in this dialogue about spending personal time together could be introduced not for the truth, but for the effect on Ingalls as the listener. *See United States v. CabreraRivera*, 583 F.3d 26, 33 n. 4 (1st Cir. 2009) ("Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context – such as a statement offered for the limited purpose of showing what effect the statement had on the listener – are not hearsay.") (citation and internal quotation marks omitted). The comment about how they wanted to go on a wine tasting together in the future is admissible as showing state of mind. *See* SMF ¶ 168; Fed.R.Evid. 803(3).

Finally, CNB does not effectively dispute that it failed to preserve surveillance footage critical to understanding how LE ended up eventually speaking to Wemes in the second interaction as a purported suspect. SMF ¶¶ 189-196. Nor can it explain the differences in its own testimony concerning if, when, and who reviewed surveillance footage with LE. SMF ¶ 198 (CNB reviewed no surveillance footage); ¶ 200 (Ingalls viewed surveillance footage); ¶ 201 (Ingalls has no recollection of whether he reviewed surveillance footage with LE).

After construing all facts and drawing all reasonable inferences in Wemes' favor, a reasonable jury could conclude that LE only said Wemes was a suspect because of Ingalls' involvement.

**IV.    Retaliation**

Summary judgment is improper on Wemes' retaliation claims. First, CNB claims that Wemes' affidavit concerning how he opposed Ingalls' homophobic comments somehow contradicts his deposition testimony. Yet it fails to cite the deposition testimony it argues is contradicted. Reply at 7.

Next, CNB's characterizes as "buzzwords" the jurisprudence of the Supreme Court of the United States concerning what constitutes oppositional conduct. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009). CNB put forth no authority to contradict *Crawford's* command that "oppose" means, among other things, to "resist," "confront," "withstand," and be "adverse to" an opinion of another. *Id*.

It cannot be disputed that Wemes' responses to Ingalls' homophobic comments "opposed" them. *See* SMF ¶¶ 124-127, 129.

## V.    Unpaid wages

CNB claims it never agreed to pay Wemes accrued, unused vacation time. Reply at 8. But in addition to the termination letter stating CNB had agreed to pay Wemes his vacation time, Pedzich testified directly that CNB agreed to pay it because Wemes "had been an upstanding employee while" with CNB. SMF ¶ 112 (citing, in part, Pedzich Dep. 54:5-55:24).

To clarify the math on Wemes' wage claim: the payroll documents in **Exhibit 23** show that Wemes only used 16 hours of vacation time in 2021 before he was suspended and terminated. *See* Pl.'s Resp. SMF ¶ 112, **Ex. 23** (DEF00346 shows 16 hours of vacation used in 2021 before CNB paid 51 hours of vacation time in Wemes' last paycheck at DEF00353). CNB's Darlene Rogers correctly reported that Wemes had "116 vacation hours to use" in 2021, and that CNB had paid 67 total vacation hours to Wemes in 2021. *See id.* at DEF00338. But CNB's own payroll records disprove Rogers' statement that CNB paid all of his accrued vacation time "in his last paycheck." *See id.*

To summarize: if Wemes had 116 vacation hours in 2021 and used 16 before he was suspended and terminated, he would have had 100 hours remaining. But CNB only paid him 51 hours of vacation time in his last paycheck, *see* DEF00353, leaving 49 vacation hours unpaid. Accordingly, CNB has not paid Wemes all wages owed. A reasonable jury could determine that CNB violated the NY Labor Law.

## VI.    Conclusion

Plaintiff Jason Wemes respectfully requests that Defendant's Motion for Summary Judgment and Attorney's Fees be denied.

**GREGORY L. SILVERMAN, ESQ., PLLC**

Dated: July 25, 2025          By:     <u>s/ Gregory L. Silverman</u>
                                       118 Genesee St.
                                       Geneva, NY  14456
                                       Tel: 585-480-6686
                                       greg@silverman-law.com
                                       Attorney for Plaintiff Jason Wemes